THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RALPH MORRISSEY, as Executor of the :
Estate of Kathleen Healy a/k/a :
Kathleen Morrissey, deceased, *et al.*, :
:
:
Plaintiffs, :
v. : 3:19-CV-894
: (JUDGE MARIANI)
GCMC GEISINGER COMMUNITY :
MEDICAL CENTER, *et al.*, :
:
Defendants. :

## MEMORANDUM AND ORDER

Presently before the Court is a discovery dispute between Plaintiff and Defendant Geisinger Community Medical Center (hereinafter "Geisinger").

On September 25, 2020, Plaintiff filed a letter with the Court explaining he had received Privilege Logs from Geisinger but that "a discovery issue has arisen as a result of the materials received from Defendant Geisinger" and specifically that the "Privilege Logs that were provided contain multiple redactions and documents that are being withheld pursuant to the Peer Review Production Act 63 P.S. § 425.1 et seq." and asserting that "these materials are in fact discoverable." (Doc. 53). Plaintiff attached the following two Privilege Logs: (1) Privilege/Discovery Log for M&M Materials; and (2) Privilege/Discovery Log for Credentialing File for [Defendant] Haitham Abughnia, M.D. (Doc. 53, at 2-6).

The Court held a conference call to address Plaintiff's letter, and Defendant Geisinger's response thereto (Doc. 56), on October 19, 2020. After hearing the parties'

arguments, and upon agreement by counsel, the Court agreed to conduct an *in camera* review of the pages in dispute. During the conference call, the parties confirmed that the following pages of the Privilege Logs were at issue:

1. *Privilege/Discovery Log for M&M Materials*:

    a. "Cardiovascular Peer Review M&M Minutes" (1 page)

    b. "Medical Staff Peer Review Case Rating Form" (3 pages)

    c. "C-CMC Heart and Vascular Institute Peer Review Powerpoint" (15 pages)

2. *Privilege/Discovery Log for Credentialing File for Haitham Abughnia, M.D.*:[1]

    a. "NPDB Request" (page 176)

    b. "Reappointment Quality Check" (pages 210-214)

    c. "Reappointment Data Sheet" (page 227)

By letter dated October 20, 2020, Defendant Geisinger provided the Court with the afore-listed documents in dispute. Defendant asserts that these documents are "clearly protected by the Pennsylvania Peer Review Protection Act." (Doc. 56, at 1).[2]

---

[1] In the Privilege Log relating to Dr. Abughnia, Defendant stated that it had redacted the social security number, date of birth, data bank reporting information, and DEA number from pages 210-214 and 227. (*See* Doc. 53, at 5). Plaintiff's counsel clarified during the telephone conference that he is only seeking the data bank information redacted from these pages and not the other aforementioned information.

[2] The above-captioned action was removed from the Court of Common Pleas for Lackawanna County on the basis of diversity jurisdiction. (Doc. 1). Plaintiff's Complaint (Doc. 1-1) asserts nine Pennsylvania state law claims arising out of the medical treatment, and death, of Kathleen M. Morrissey. Because this action involves only state law claims, Defendant's assertion of the state law privilege derived from the Peer Review Protection Act ("PRPA") is appropriate. *See* Fed. R. Civ. P. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) ("In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state law.").

The Pennsylvania Peer Review Protection Act ("PRPA") "provides a narrow evidentiary privilege to protect the 'proceedings and documents of a review committee' conducting peer review activities by professional health care providers in conformity with its provisions." *Reginelli v. Boggs*, 181 A.3d 293, 296 (Pa. 2018). The statute "represents a determination by the legislature that, because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities." *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 32 (Pa. Cmmw. Ct. 2001).

Thus, pursuant to the PRPA,

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any such civil action merely because they were presented during proceedings of such committee. . .

63 P.S. § 425.4.

The Court first turns to the documents and information at issue in Geisinger's Privilege/Discovery Log for Credentialing File for Haitham Abughnia, M.D.

The PRPA's "evidentiary privilege is reserved only for the 'proceedings and documents of a review committee.'" *Reginelli*, 181 A.3d at 304 (quoting 63 P.S. § 425.4). As further explained by the Pennsylvania Supreme Court,

3

> Review of a physician's credentials for purposes of membership (or continued membership) on a hospital's medical staff is markedly different from reviewing the "quality and efficiency of service ordered or performed" by a physician when treating patients. Accordingly, although "individuals reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto," 63 P.S. § 425.2, are defined as a type of "review organization," such individuals are not "review committees" entitled to claim the PRPA's evidentiary privilege in its section 425.4.

*Id.* at 305-306. *See also, Estate of Krappa v. Lyons*, 211 A.3d 869, 875 (Pa. Super. Ct. 2019) (where the files at issue consist entirely of credentialing materials, the "PRPA's protections do not extend to the credentialing committee's materials, because this entity does not qualify as a 'review committee,'" citing *Reginelli*).

Nonetheless, Pennsylvania courts have repeatedly held that disclosure of information contained within National Practitioner Data Bank ("NPDB") reports is prohibited pursuant to the PRPA and federal statute.[3]  *See e.g., Jacksonian v. Temple Univ. Health Sys. Found.*, 862 A.2d 1275, 1280 (Pa. Super. Ct. 2004) ("The statutes on which [Defendant] relies prohibit only the disclosure of the information *contained in* the Data Bank. *See* 42 U.S.C. § 11137(b)(1); 63 P.S. § 425.4.  These statutes in no way imply that a hospital cannot disclose whether it *made inquiries to* the Data Bank, or why it did not make inquiries.") (emphasis in original).  In addition, although Plaintiff relies on *Leadbitter v. Keystone Anesthesia Consultants, Ltd.*, 229 A.3d 292 (Pa. Super. Ct. 2020) to support the argument that data bank reporting information is not privileged, that case is of questionable value here.  This is so

---

[3] The NPDP describes itself as "a web-based repository of reports containing information on medical malpractice payments and certain adverse actions related to health care practitioners, providers, and suppliers." NATIONAL PRACTITIONER DATA BANK, *npdp.hrsa.gov/topNavigation/aboutUs.jsp*.

4

because the Pennsylvania Supreme Court has accepted the petition for allowance of appeal in that action, specifically as to the issues of whether the lower court erred in ordering "the production of acknowledged 'peer review documents' solely because they were maintained in a physician's credentialing file", in violation of the PRPA, and whether the lower court's holding also "directly conflicts with the Federal Healthcare Quality improvement Act, 42 U.S.C. § 11137(B)(1), and federal regulations which protect from disclosure, responses to statutorily-required inquiries of the national practitioner data bank, by ordering the production of such documents solely because they were maintained in physician's credentialing file." *See Leadbitter v. Keystone Anesthesia Consultants, Ltd.*, 2020 WL 5524849 (Pa. 2020) (*per curiam* order granting petition for allowance of appeal).

Here, the "NPDB Request" (p. 176) is unambiguously a response generated by the Data Bank, containing only Data Bank information. It is further undisputed that the only redacted information at issue in pages 210-214 and 227 is data bank reporting information. Such information is likewise protected by the privilege created by the PRPA under state law. The case law supports the conclusion that although the PRPA's protections do not extend to the credentialing committee's materials, the Data Bank information contained therein is subject to protection under the PRPA.

For these reasons, Plaintiff's objections relating to pages 176, 210-214, and 227 of Geisinger's Privilege/Discovery Log for Credentialing File for Haitham Abughnia, M.D. will be overruled.

With respect to the documents at issue in Geisinger's Privilege/Discovery Log for M&M Materials, the Court finds that all pages, with the exception of pages 5, 6, 7, 8, and 14 of the "G-CMC Heart and Vascular Institute Peer Review Powerpoint" are properly designated as privileged under the PRPA.

On their face, the "Cardiovascular Peer Review M&M Minutes" and "Medical Staff Peer Review Case Rating Form" clearly fall within the documents intended to be considered privileged by the PRPA. These documents are each annotated as "Peer Review Generated Document[s] Solely for Quality Improvement Purposes pursuant to 63 P.S. Section 425.1 et seq. and MCARE" and review of the documents confirms that they were intended only for the purpose of conducting peer review. Those documents plainly consist of "proceedings and records of a review committee" which arise "out of the matters which are the subject of evaluation and review by such committee", 63 P.S. § 425.4. Examination of the documents establishes that they were all created by, and for, the systems peer review committee, which was comprised of *only* professional health care providers as defined in 63 P.S. § 425.2, and were used by these health care providers for evaluation of the quality and efficiency of services ordered or performed by other professional health care providers involved in Mrs. Morrissey's medical care. *Cf. Ungurian v. Beyzman*, 232 A.3d 786, 800 (Pa. Super. Ct. 2020) (PRPA privilege did not apply to meeting minutes where the Committee included both hospital members and community members served by hospital and thus was not exclusively comprised of "professional healthcare providers."). To find that the "Cardiovascular Peer Review M&M Minutes" and "Medical Staff Peer Review Case Rating Form" are not subject to

the PRPA privilege would contravene the precise purpose for which that statute's protections were enacted. *See e.g., Joe*, 782 A.2d at 32 (the "need for confidentiality in the peer review process stems from the need for comprehensive, honest, and sometimes critical evaluations of medical providers by their peers in the profession. Without the protection afforded through the confidentiality of the proceedings, the ability of the profession to police itself effectively would be severely compromised.") (internal citation omitted).

The same analysis and conclusion apply to the majority of the 15-page "G-CMC Heart and Vascular Institute Peer Review Powerpoint". The first powerpoint slide specifically makes clear that the slides were created solely for the "Systems Peer Review Committee" and for the purpose of quality improvement pursuant to PRPA and MCARE in addressing Mrs. Morrissey's case. Nonetheless, upon review of the powerpoint, five of the slides consist of "information, documents or records otherwise available from original sources" and are therefore not privileged, despite being presented during proceedings of the peer review committee, *see* 63 P.S. 425.4. The slides on 5, 6, 7, 8, and 14, which the Court notes may well already be in Plaintiff's possession, consist of doctors' notes from a cardiology consult and examination, an electrocardiogram print-out, an x-ray, and a stress parameters sheet, all generated in the course of Mrs. Morrissey's treatment. *See Ungurian*, 232 A.3d at 797 ("the PRPA does not protect documents available from other sources or documents that have been shared outside of the peer review committee."). As such, these five slides are not protected under § 435.4 and Defendant will be ordered to produce those slides to Plaintiff.

**ACCORDINGLY, THIS** \_\_\_20th\_\_\_ **DAY OF NOVEMBER, 2020**, for the reasons set forth herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's objection to Defendant's assertion of privilege pursuant to the PRPA with respect to the Privilege/Discovery Log for Credentialing File for Haitham Abughnia, M.D. is **OVERRULED**.

2. Plaintiff's objection to Defendant's assertion of privilege pursuant to the PRPA with respect to the "Cardiovascular Peer Review M&M Minutes" and "Medical Staff Peer Review Case Rating Form" is **OVERRULED**.

3. Plaintiff's objection to Defendant's assertion of privilege as to the "G-CMC Heart and Vascular Institute Peer Review Powerpoint" is **SUSTAINED IN PART AND OVERRULED IN PART** as follows:

    a. Defendant shall provide pages 5, 6, 7, 8, and 14 of the powerpoint to Plaintiff.

    b. Plaintiff's objection is overruled in all other respects.

Robert D. Mariani
United States District Judge