THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

JAN 2 7 2022

Per_____

DEPUTY CLERK

RALPH MORRISSEY, as Executor of the :
Estate of Kathleen Healy a/k/a :
Kathleen Morrissey, deceased, *et al.*, :
:
:
Plaintiffs, :
:
v. :   **3:19-CV-894**
:   **(JUDGE MARIANI)**
:
GCMC GEISINGER COMMUNITY :
MEDICAL CENTER, *et al.*, :
:
:
Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION

The above-captioned action was removed from the Court of Common Pleas for

Lackawanna County on May 24, 2019, on the basis of diversity jurisdiction.  (Doc. 1).

Plaintiff's[1] Complaint (Doc. 1-1), arising out of the medical treatment and death of Kathleen

M. Morrissey, asserts state law claims of Negligence against Geisinger Community Medical

Center (Count I), The Wright Center for Community Health (Count II), Dr. Paul Dubiel

(Count III), Dr. Haitham Abughnia (Count IV), and Dr. Saurabhkumar Vadilal Patel (Count

V). The Complaint further asserts state law claims of Corporate Negligence against

Geisinger Community Medical Center (Count VI) and Wrongful Death (Count VII), Survival

---

[1] The Court refers to Plaintiff in the singular where Plaintiff's counsel's filings uniformly do so.
However, the Court recognizes that it is both Ralph Morrissey, as executor of the estate of Kathleen
Morrissey, and Ralph Morrissey in his own right, who are the plaintiffs in this matter.

Action (Count VIII), and Negligent Infliction of Emotional Distress (Count IX) against all

Defendants.

Trial in this matter on Counts I, II, and IV-IX is scheduled to commence on January

31, 2022.[2]

Presently before the Court are the following motions *in limine* filed by Plaintiff:

1. "Plaintiff's Motion *in Limine* to Preclude the Defense from Introducing any Evidence that Kathleen Morrissey Refused a Cardiac Catherization" (Doc. 95);

2. "Plaintiff's Motion *in Limine* to Preclude Evidence of Cirrhosis and Alcoholism" (Doc. 96);

3. "Plaintiff's Motion *in Limine* to Preclude Defendants The Wright Center for Graduate Medical Education and Saurabhkumar Vadilal Patel, M.D. from Introducing a Report or Testimony of James A. Stavros, CPA, CFF" (Doc. 108).

The Court will address these motions in turn.

## II. Standard of Review

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial

on the admissibility and relevance of certain forecasted evidence." *United States v.

Tartaglione*, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to

rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods.

Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a

---

[2] Count III of Plaintiff's Complaint alleges a claim of Negligence against Dr. Paul Dubiel. Because Dr. Dubiel was dismissed with prejudice on December 2, 2021 (*see* Doc. 94), this claim is no longer extant.

"trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F.Supp.3d at 406.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). *See also*, *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules."). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## III. ANALYSIS

### 1. Plaintiff's Motion *in Limine* to Preclude the Defense from Introducing any Evidence that Kathleen Morrissey Refused a Cardiac Catherization (Doc. 95)

Plaintiff's first Motion *in Limine* (Doc. 95) requests that "the defense be precluded from introducing evidence that Kathleen Morrissey refused a cardiac catherization procedure when one was never recommended to her" (Doc. 95, at 6). Plaintiff argues that "[t]estimony that Mrs. Morrissey 'refused' a recommended test would be inaccurate, misleading and prejudicial because not only was this procedure not refused, but it was also never recommended." (*Id*. at 8).

Under the Federal Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible and relevant evidence is admissible unless otherwise provided by the Constitution, federal statute, Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

4

Here, Plaintiff does not dispute the relevance of the issue of cardiac catherization, but instead argues that any evidence regarding whether Mrs. Morrissey refused a cardiac catherization is barred by Rule 403 as unfairly prejudicial and misleading.  In support of this assertion, Plaintiff points to several portions of Dr. Abughnia's deposition testimony which Plaintiff characterizes as demonstrating that a cardiac catherization was not discussed with Mrs. Morrissey or recommended to her.  (*See* Doc. 95, at 6).  Plaintiff further notes the documentary absence of any recommendation for a cardiac catherization.  (*Id*. at 7).  However, Defendants have presented this Court with other portions of Dr. Abughnia's testimony which, if believed, may lead a jury to determine that cardiac catherization was discussed with Mrs. Morrissey and that she declined this procedure.  (*See* Docs. 119, 121). As a result, there is sufficient conflicting evidence and testimony to create a material factual dispute as to whether (1) cardiac catherization was discussed with, or offered to, Mrs. Morrissey, and (2) whether Mrs. Morrissey refused this procedure.  Plaintiff's motion requests that this Court impermissibly invade the fact-finding province of the jury by evaluating Dr. Abughnia's credibility and weighing the evidence which may be presented at trial.  The Court will not do so.

The Court will therefore deny Plaintiff's motion to preclude Defendants from introducing evidence that Kathleen Morrissey refused a cardiac catherization procedure (Doc. 95).

2. **Plaintiff's Motion *in Limine* to Preclude Evidence of Cirrhosis and Alcoholism (Doc. 96)**

Plaintiff further requests that this Court preclude the defense from introducing evidence of Mrs. Morrissey's "cirrhosis and alcoholism." (Doc. 96). Plaintiff argues that "[a]ny evidence that Kathleen Morrissey had a history of cirrhosis and alcoholism is unduly prejudicial and would detract from the issues in this matter" and that the testimony with respect to the cirrhosis is not based on sufficient facts or data to support the conclusions of Defendants' experts. (Doc. 96, at 6, 7). In response, Defendants assert that evidence of Mrs. Morrissey's cirrhosis and alcoholism is relevant to the issues of the standard of care, causation, and her life expectancy and resulting future earnings capacity. (*See* Docs. 107, 109, 122).

Here, Defendants have offered a number of expert Reports which, in part, rely on the decedent's cirrhosis to rebut the opinions of Plaintiff's experts as to the standard of care and Mrs. Morrissey's life expectancy, both of which are highly relevant issues at trial.

Dr. Emil Hayek, Plaintiff's expert, states in his April 5, 2021 Report when opining on causation that Mrs. Morrissey's "operative mortality would have been 1-2% and her life expectancy would have been in excess of 20 years." The "Appraisal of Economic Loss" Report of Plaintiff's expert, Kristin Kucsma, states in the "Background Fact[] and Assumption[s]" that Mrs. Morrissey's statistical date of death is July 10, 2040, where

"females of decedent's age have an expected total life span averaging 85.36 years", and thus premises her economic loss damages based on this life expectancy.

In stark contrast, Dr. Abughnia's expert, Dr. Steven Nierenberg, expressly rebuts Dr. Hayek's life expectancy estimate in his expert Report, stating that Mrs. Morrissey's life expectancy was "on average only 5 years." He further disagrees with Dr. Hayek's assessment that Mrs. Morrissey's operative mortality would have been 1-2%, based in part on Dr. Nierenberg's opinion that the "cirrhosis history increases her risk of a bleeding complication post op as well as the risk of anticoagulation post op. . . ." Dr. Robert Norris, expert for The Wright Center and Dr. Patel, also specifically disputes that Mrs. Morrissey's life expectancy would be in excess of 20 years, opining in his expert Report that "[e]ven if she survived surgery and did not have any major complications from surgery, her life expectancy would have been significantly less than 20 years." Dr. Norris also opines that Mrs. Morrissey's operative mortality "would have been much higher than 1 to 2% given her other medical problems which included . . . cirrhosis of the liver. . ."

Here, Plaintiff moves to preclude evidence of a Mrs. Morrissey's history of alcoholism and cirrhosis pursuant to Rules of Evidence 403 and 702.

Courts in this Circuit, as well as outside the Third Circuit, have repeatedly held that a plaintiff's history of alcoholism and/or drug use is relevant to a person's life expectancy and possible loss of earning. *See Fife v. Bailey*, 2016 WL 1404202, *2 (M.D.Pa. 2016) (collecting cases). Although the Court fully agrees with the reasoning of those Courts, the

facts and evidence in this action suggest the availability of a slightly different solution to reduce any unfair prejudice to Plaintiff.

With respect to Mrs. Morrissey's life expectancy, and its impact on her potential damages, Plaintiff has squarely put this issue in dispute, and the parties' experts have offered sharply diverging opinions in their reports when addressing this issue. Any evidence of cirrhosis is directly relevant to the issue of Mrs. Morrissey's life expectancy. Nor does Plaintiff argue otherwise. (*See generally*, Doc. 96). Instead, Plaintiff asserts that such evidence would be "unduly prejudicial" and must be barred pursuant to Rule 403. This argument fails. As set forth *supra*, the parties' experts have presented drastically different life expectancy estimates premised, in part, on Mrs. Morrissey's cirrhosis (or lack thereof). To the extent that Plaintiff argues that evidence of cirrhosis is prejudicial because it implies alcoholism, the Court notes that cirrhosis may be the result of a number of causes, including, but not limited to, alcohol consumption, hepatitis, inherited and genetic disorders, infection, or the use of certain medications. Thus, on its face, evidence of cirrhosis, where evidence of alcoholism is precluded, is not unnecessarily suggestive of alcoholism nor unduly prejudicial. On balance, it is clear that the relevance and probative value of any evidence of cirrhosis is not substantially outweighed by a danger of unfair prejudice.

Nonetheless, although the Court will deny Plaintiff's motion with respect to cirrhosis, the motion will be granted with respect to any specific reference to Mrs. Morrissey's alcoholism. Plaintiff's brief in support of the *in limine* motion states that Mrs. Morrissey was

a "recovering alcoholic and had been so since 1989." (Doc. 96). Defendants do not dispute this statement. No party has pointed to any reference to the alcoholism in the expert reports or otherwise set forth any basis for the relevance of such testimony to a determination by the jury of any material issues in this case, including causation, standard of care, or economic damages. While the cirrhosis itself is relevant at trial, the Defendants fail to explain how the *cause* of the cirrhosis is relevant in this case. In contrast, even if the Court were to find that evidence that Mrs. Morrissey was a recovering alcoholic had minimal relevance, the probative value of such evidence would be substantially outweighed by a danger of unfair prejudice, and must therefore be precluded under Rule 403.

While evidence of decedent's cirrhosis is admissible for the purpose of disputing Plaintiff's evidence of Mrs. Morrissey's life expectancy and damages, the relevance of this evidence to the issues of causation and standard of care is more tenuous. However, for substantially the same reasons as set forth above, the evidence of cirrhosis will not be precluded to the extent it is offered to rebut Plaintiff's experts' opinions as to the standard of care and causation. As quoted, *supra*, at least one of Plaintiff's experts has placed Mrs. Morrissey's operative mortality at issue in this case. Should Defendants' experts disagree with Plaintiff's expert's assessment of the decedent's operative mortality at trial, the probative value of their testimony is not substantially outweighed by a danger of unfair prejudice.

Citing Federal Rule of Evidence 702, Plaintiff also argues that "there is no expert support to link Mrs. Morrissey's reported cirrhosis to any reduced life expectancy." (Doc. 96, at 7). Plaintiff admits that there "are references in Mrs. Morrissey's primary care physician's records that she suffered from alcoholism nearly 30 years ago and that she had cirrhosis", but cites the rebuttal expert Report of Dr. Hayek, wherein he notes that Mrs. Morrissey had tests over the course of a number of years which showed normal liver function. (*Id.* at 6, 7). Relying on Dr. Hayek's Report, Plaintiff asserts that the expert testimony as to the cirrhosis "does not meet Rule 702's requirement that expert testimony be 'based on sufficient facts or data' to support the conclusions." (*Id.* at 7).

Federal Rules of Evidence 702 and 703 largely control the Court's analysis on this issue. The Rules of Evidence, and Rule 702 in particular, assign the trial court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Pursuant to Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The inquiry under Rule 702 is "a flexible one." *Daubert,* 509 U.S. at 594. The overarching subject of the Rule is "the scientific validity and thus the evidentiary

relevance and reliability – of the principles that underlie a proposed submission." *Id*. at 594-

595.[3] With respect to Rule 703, it provides in relevant part that:

> An expert may base an opinion on facts or data in the case that the expert has
> been made aware of or personally observed. If experts in the particular field
> would reasonably rely on those kinds of facts or data in forming an opinion on
> the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703.

"[A]n expert may express an opinion that is based on facts that the expert assumes,

but does not know, to be true.  It is then up to the party who calls the expert to introduce

other evidence establishing the facts assumed by the expert." *Williams v. Illinois*, 567 U.S.

50, 57 (2012) (plurality).  Nonetheless, "[t]o the extent that [the expert's] opinions were

predicated upon factual assumptions . . . those assumptions 'must find some support in the

record.'" *Shaw by Strain v. Stackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990) (quoting *Penn.*

*Dental Ass'n v. Med. Serv. Ass'n of Penn.*, 745 F.2d 248, 262 (3d Cir.1984)).  "An expert

who testifies primarily from experience must explain 'how that experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and how that

experience is reliably applied to the facts.'" *Trout v. Milton S. Hershey Med. Ctr.*, 576

F.Supp.2d 673, 676 (M.D. Pa. 2008) (quoting *Suter v. Gen. Acc. Ins. Co. of Am.*, 424

F.Supp.2d 781, 788 (D.N.J.2006) (quoting Fed.R.Evid. 702 advisory committee's note, 2000

---

[3] Although *Daubert* held that Rule 702 imposes an obligation on the Court to "ensure that any and
all scientific testimony . . . is not only relevant, but reliable", this gatekeeping obligation has subsequently
been extended to all expert testimony and is not limited only to "scientific" testimony.  *See Kumho Tire Co.,
Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

amends.)). However, when parties dispute the basis of an expert's conclusions, the Supreme Court has stated that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment." *Daubert*, 509 U.S. at 596, 113; *see also, ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012) (finding the district court correctly noted that although some of Plaintiff's expert's testimony may have been contradicted by other evidence, including the testimony of Defendant's expert, the existence of conflicting evidence was not a basis on which to exclude Plaintiff's expert's testimony because the respective credibility of plaintiff and defendant's experts was a question for the jury to decide.).

Here, Plaintiff asks this Court to weigh arguably conflicting evidence presented in the decedent's medical records and determine which records the experts in this case were entitled to rely upon. The results of Mrs. Morrissey's liver function tests may be proper material for cross-examination of Defendants' experts, but they are not dispositive of the issue of whether Mrs. Morrissey had cirrhosis. Rather, to the extent that Plaintiff believes that the opinions of Defendants' experts as to the effect of Mrs. Morrissey's purported cirrhosis are unsubstantiated by the available facts upon which the experts based their

conclusions, or that these experts relied on incorrect facts in forming their conclusion, the appropriate remedy is the presentation of contrary evidence and cross-examination of the witnesses.

For the foregoing reasons, Plaintiff's motion to preclude evidence of cirrhosis and alcoholism (Doc. 96) will be granted in part and denied in part as set forth herein.

3. **Plaintiff's Motion *in Limine* to Preclude Defendants The Wright Center for Graduate Medical Education and Saurabhkumar Vadilal Patel, M.D. from Introducing a Report or Testimony of James A. Stavros, CPA, CFF" (Doc. 108)**

Finally, Plaintiff requests that this Court preclude Defendants from introducing the expert report of James Stavros as well as the testimony of this expert. (Doc. 108). Plaintiff asserts, and Defendants The Wright Center and Dr. Patel do not dispute, that the expert report of James Stavros was sent to Plaintiff on December 27, 2021, approximately 6 months after the expiration of the deadline for the completion of expert discovery. (Doc. 108, at 6; *see also*, Doc. 124, at 6). Due to the untimeliness of the disclosure of the expert report, Plaintiff claims that he would be prejudiced "should the report or testimony of Mr. Stavros be allowed at trial". (Doc. 108, at 6).

As a threshold matter, the Court must determine whether The Wright Center and Dr. Patel failed "to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). Pursuant to Federal Rule of Civil Procedure 26(a)(2), "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of

13

Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A).  In the case of expert witnesses

who must provide a written report, the disclosure of the expert testimony must include that

written report.  *Id.* at 26(a)(2)(B).  Absent a stipulation or court order, expert disclosures

must be made "at least 90 days before the date set for trial or for the case to be ready for

trial" or "if the evidence is intended solely to contradict or rebut evidence on the same

subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after

the other party's disclosure."  *Id.* at 26(a)(2)(D)(i).

Rule 37 permits a district court to impose sanctions upon a party for, among other

things, failing to provide discovery or failing to timely supplement discovery responses.

Rule 37(c) provides, in relevant part that "[i]f a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at  hearing, or at trial, unless the failure was

substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of

this sanction, the court, on motion and after giving an opportunity to be heard" may impose

other sanctions as set forth in Rule 37(c)(1)(A)-(C).

With respect to the "substantial justification" standard, the Third Circuit has

expressed agreement with a Middle District of Pennsylvania Court decision which found

that:

> "Substantial justification" for the failure to make a required disclosure has been
> regarded as justification to a degree that could satisfy a reasonable person that
> parties could differ as to whether the party was required to comply with the

disclosure request. The test of substantial justification is satisfied if there exists
a genuine dispute concerning compliance.

*Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119 (3d Cir. 2009)(quoting *Tolerico v.*

*Home Depot*, 205 F.R.D. 169, 175-176 (M.D. Pa. 2002)).  In determining whether a party's

misconduct is "harmless", a Court must determine whether the misconduct "involves an honest

mistake, coupled with sufficient knowledge by the other party of the material that has not been

produced." *Tolerico*, 205 F.R.D. at 176 (quoting *Stallworth v. E-Z Serve Convenience Stores*,

199 F.R.D. 366, 369, (M.D. Ala. 2001)).

Here, where The Wright Center and Dr. Patel do not dispute that the expert report of

Mr. Stavros was not timely disclosed pursuant to Rule 26(a)(2)(D), the Court must determine

whether the failure was "substantially justified" or "harmless."  However, even when the

defendants have not satisfied their burden of proving substantial justification or

harmlessness, Rule 37(c) still vests this Court with discretion in deciding whether to exclude

witnesses or exhibits that were not timely disclosed during pre-trial litigation.  *See Tolerico*,

205 F.R.D. at 176 (explaining that exclusion of evidence "is not automatic" under Rule

37(c)(1), and that the "fact that Rule 37(c) prescribes that a court may impose certain

sanctions 'in lieu of' exclusion has been regarded as conveying a measure of discretion in

determining whether to bar evidence based upon a party's failure to comply with Rule

26(a).").[4]

---

[4] Since the issuance of the *Talerico* decision in 2012, the words "in lieu of" have been replaced by
the words "instead of" in Rule 37(c)(1).  This linguistic change does not alter the meaning, purpose, or
application of Rule 37(c)(1).

In determining whether to exclude some or all of a witness's testimony due to the failure

of a party to comply with pre-trial requirements, a Court should assess the following factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded
> witnesses would have testified,
> (2) the ability of that party to cure the prejudice,
> (3) the extent to which waiver of the rule against calling unlisted witnesses
> would disrupt the orderly and efficient trial of the case or other cases in the
> court, and
> (4) bad faith or willfulness in failing to comply with the district court's order.

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v.*

*Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904-905 (3d Cir. 1977)).  *See*

*also, DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1201-1202 (3d Cir. 1978).

Additionally, the Court must take into consideration the significance of the practical

importance of the excluded evidence.  *Konstantopoulos*, 112 F.3d at 719; *DeMarines*, 580

F.2d at 1202; *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991).

The Third Circuit has cautioned that "the exclusion of critical evidence is an

'extreme' sanction, not normally to be imposed absent a showing of willful deception or

'flagrant disregard' of a court order by the proponent of the evidence."  *Meyers,* 559 F.2d at

905 (citing *Dudley v. S. Jersey Metal, Inc.,* 555 F.2d 96, 99 (3d Cir. 1977)).  In other words,

the "exclusion of evidence is a drastic sanction which must pass the strict *Meyers* test to be

upheld." *DeMarines,* 580 F.2d at 1202 (internal citation omitted).  The Third Circuit has thus

reversed the exclusion of expert testimony by district courts where there is only a "slight

deviation from pre-trial notice requirements, and admitting the witness [is] likely to cause

only slight prejudice" to an opposing party who was already aware of the "basic substance

of the witness' testimony." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 792 (3d Cir. 1994)

(citing *DeMarines,* 580 F.2d at 1202).

Assuming that Defendants' failure to comply with Rule 26(a)(2) was not "substantially

justified" or "harmless", an analysis of the *Meyers* factors nonetheless demonstrates that a

Rule 37 sanction, and specifically the preclusion of Mr. Stavros' expert Report and testimony,

is not appropriate for a number of reasons.

Plaintiff fails to cite Rule 37, *Meyers, Konstantopoulos*, or any other applicable law,

instead only arguing that Mr. Stavros' report is "late" pursuant to Rule 26(a)(2)(D), "and is

littered with complicated calculations and citations to many reference materials" and thus

Plaintiff "would be prejudiced should the report or testimony of Mr. Stavros be allowed at

trial." (Doc. 108, at 6). Notably, Plaintiff only sets forth these brief and general statements in

support of his motion and presents this Court with no specific explanation for how he would

be prejudiced by the report or testimony of Mr. Stavros at trial.

Plaintiff's assertion that Mr. Stavros' Report is "littered with complicated calculations

and citations to many reference materials", thus giving rise to prejudice, is also

disingenuous. Upon careful review of Mr. Stavros' Report, and comparison to the Report of

Plaintiff's economic expert, Ms. Kucsma, it is clear that the Stavros Report is limited to

directly rebutting statements and calculations set forth by Ms. Kucsma and offering

alternative calculations and opinions. In addition to the case-specific materials provided to

the experts, both experts relied on several of the same, or substantially similar, outside

sources and reference materials, including the 2020 Economic Report of the President, The

Dollar Value of a Day, 2019, and United States Life Tables.  Mr. Stavros relied only on a

small handful of resource and reference materials outside of those already used by Ms.

Kucsma, and certainly not "many" as claimed by Plaintiff.  In addition, Mr. Stavros sets forth

far fewer calculations than Ms. Kucsma, and those calculations are in direct response to Ms.

Kucsma's calculations and are neither "littered" throughout the Report nor substantially

complicated.

The prejudice to Plaintiff is further reduced by counsel's ability to cure the claimed

prejudice.  Both this Court and the Defendants attempted to aid Plaintiff in curing any

prejudice.  In their brief in opposition to Plaintiff's motion *in limine,* the Defendants offered to

produce Mr. Stavros for an expert deposition prior to trial (Doc. 124, at 8).  Subsequently, at

the pre-trial conference held on January 21, 2022, the Court specifically asked Plaintiff's

counsel whether they wanted Mr. Stavros produced for a deposition, to which counsel

replied that there was not sufficient time.  Although Mr. Stavros' Report was undisputedly

late, and the Court does not condone such pre-trial litigation lapses, Plaintiff cannot be

heard to complain when counsel does not take steps to try to cure or lessen the prejudice

from which he claims he now suffers.  Instead, there is no evidence of record that Plaintiff

did anything other than summarily file a motion to preclude Mr. Stavros' Report and

testimony three days after receiving the Report.  Similarly, where Plaintiff has declined the

opportunity to depose Mr. Stavros, nor indicated the need for additional time to prepare for trial due to the untimely disclosure of Mr. Stavros' Report, it cannot be said that permitting Mr. Stavros' Report and testimony at trial "would disrupt the orderly and efficient trial of the case."

Further, Plaintiff has presented an economic expert Report which opines that "the present value of the past and future pecuniary losses resulting from the impairment and death of Kathleen Morrissey amounts to" $3,295,567 and sets forth in detail the bases for this conclusion. The amount of damages to which Plaintiff is entitled is a significant issue at trial, and Plaintiff's multi-million dollar assessment of the decedent's economic losses to which he is entitled arguably increases the importance of Defendants' expert Report and Defendants' ability to attempt to rebut Plaintiff's evidence.

Finally, while the Court questions why Mr. Stavros' Report was not completed and provided to Plaintiff until December, 2021, there is no basis in the record to support a finding that Defendants' counsel acted in bad faith or willfulness in failing to comply with the pre-trial deadlines. This is particularly so where there is no evidence of record that counsel for The Wright Center and Dr. Patel disregarded other pre-trial deadlines or has otherwise acted in bad faith during the course of this litigation.

For the forgoing reasons, the Court finds that a balancing of the *Meyers* factors weighs against the imposition of Rule 37 sanctions, and specifically the preclusion of Mr. Stavros' expert report and testimony. Plaintiff's motion to preclude Defendants Wright

Center and Dr. Patel from introducing the report or testimony of Mr. Stavros (Doc. 108) will therefore be denied.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff's *in limine* motions (Docs. 95, 96, 108) will be decided as set forth in this Memorandum Opinion.  The rulings, however, do not alter the parties' responsibility to raise any objections to the evidence that the Court has not precluded at the appropriate time at trial, if warranted.  A separate Order follows.

Robert D. Mariani
United States District Judge